CITY OF MINNEAPOLIS
COMMISSION ON CIVIL
RIGHTS, Appellants,

v.

UNIVERSITY OF MINNESOTA,
Respondent.

No. C8–84–708.

Court of Appeals of Minnesota.

Oct. 30, 1984.

David M. Gross, Asst. City Atty., Minneapolis, for appellant.

William P. Donohue, Minneapolis, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from the trial court's order quashing a subpoena served by the Minneapolis Commission on Civil Rights on an employee of the University of Minnesota hospitals on the grounds that the Minneap-

olis Commission has no jurisdiction over the University.

We affirm.

## FACTS

Dale Fuller filed a complaint in August 1983 with the Minneapolis Department of Civil Rights (DCR), alleging the University of Minnesota discriminated against him because of his race when he applied for a position as a financial representative. The University asserted DCR does not have jurisdiction over it. Civil rights charges filed against the University in other locations have been referred to the Minnesota Department of Human Rights.

Subsequent requests to the University by DCR for information regarding Fuller's allegations were refused. DCR then served a subpoena on a university employee to attend a hearing of the Minneapolis Commission on Civil Rights and bring certain documents.

The University moved to quash the subpoena on the grounds that the department lacks jurisdiction over the University. The court quashed the subpoena.

## ISSUE

Does the Minneapolis Commission on Civil Rights have jurisdiction to prosecute civil rights complaints against the University of Minnesota?

## ANALYSIS

The Minneapolis Commission's power to investigate civil rights violations was established in Minnesota Laws 1975, ch. 82 (not codified):

Section 1. * * * In addition to all other powers conferred by statute or charter, the city council of the city of Minneapolis may, by ordinance, grant to any Minneapolis human rights, human relations, or civil rights commission, department, or director, any and all powers and duties which are granted by Minnesota Statutes 1974, Chapter 363 to any state human rights, human relations, or civil rights

commissioner, department, or state board.

Section 2. * * * The city council of the city of Minneapolis may, by ordinance, provide that the housing and redevelopment authority of Minneapolis, the special school district No. 1 of Minneapolis and any commission, board or department of city government created by the charter of the city of Minneapolis or by statute or ordinance are subject to the existing civil rights ordinance and any hereafter enacted.

■ The State of Minnesota is not mentioned in the above law. It therefore is not bound by that law, unless the words of the act leave no doubt as to the legislature's intent to bind the state. Minn.Stat. § 645.-27 (1982). The University seeks the protection offered by section 645.27 by claiming to be a part of the state.

The University's unique relationship to the state has been described in *State, University of Minnesota v. Chase,* 175 Minn. 259, 220 N.W. 951 (1928). In *Chase,* the court considered a dispute between the regents and the state Commission of Administration and Finance on the control of the University's finances. The court found that the university "is, in the ordinary and functional sense, plainly an agency of the state." *Id.* at 262, 220 N.W. at 952. The court further described the University as a "state institution, in the legal as well as the colloquial sense * * *." *Id.* at 262, 220 N.W. at 953.

■ The Minneapolis Commission counters that the University does not have the 'sovereignty' accorded to the state, but only 'autonomy' over its internal affairs. This claim flies in the teeth of repeated and consistent decisions of the Supreme Court that the university is a state entity. *Id.;* *Miller v. Chou,* 257 N.W.2d 277, 278 (Minn. 1977) ("The Regents of the University of Minnesota is a unique entity, being both a constitutional corporation and an agency of the state."); *see Stein v. Regents of the*

*University of Minnesota,* 282 N.W.2d 552 (Minn.1979).

Finally, we note:

A municipality has no inherent powers, but only such powers as are expressly conferred by statute or are implied as necessary in aid of those powers which are expressly conferred. * * * [I]f a matter presents a statewide problem, the implied necessary powers of a municipality to regulate are narrowly construed unless the legislature has expressly provided otherwise.

*Welsh v. City of Orono,* 355 N.W.2d 117 (Minn.1984). Civil rights problems are not confined to a metropolitan area. They can fairly be stated to be a statewide problem. *Welsh,* then, requires a narrow construction of Minneapolis' powers to regulate civil rights.

The enabling legislation for the Minneapolis Commission on Civil Rights does not expressly mention the state, or the University. Absent such references, the power to investigate and prosecute civil rights complaints against the University of Minnesota lies solely with the state agency empowered to pursue those allegations, and not with the City of Minneapolis.

Fuller does not lose the right to have his discrimination complaint heard. He has a place to file his complaint. It is with the Minnesota Department of Human Rights.

### DECISION

The City of Minneapolis Commission on Civil Rights does not have jurisdiction to pursue civil rights complaints against the University of Minnesota.

Affirmed.